UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED FOOD AND COMMERCIAL WORKERS UNION LOCAL NO. 655,<br><br>　　Plaintiff,<br><br>v.<br><br>ST. JOHN'S MERCY HEALTH SYSTEM d/b/a ST. JOHN'S MERCY MEDICAL CENTER,<br><br>　　Defendant. | Case No.: 4:06CV01345 DDN |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF
ITS MOTIONS FOR ISSUANCE OF
<u>TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION</u>**

### **I. Introduction**

Plaintiff United Food and Commercial Workers Union Local No. 655 ("Local 655" or "Union") has moved this Court to issue a temporary retraining order enjoining and restraining defendant St. John's Mercy Health System d/b/a St. John's Mercy Medical Center ("the Medical Center") from its ongoing violation of Article 15 of the collective bargaining agreement between Local 655 and the Medical Center by refusing to reinstate Nurse Practitioner Cathy Schleef in compliance with an arbitration award. Plaintiff also moves the Court to subsequently issue a preliminary injunction extending the terms of the temporary restraining order, following a hearing on the matter.

## II. Statement of Facts

Plaintiff Local 655 is a labor organization, representing a bargaining-unit of approximately 1100 to 1500 Registered Nurses (RNs) employed at defendant Medical Center. Local 655 and the Medical Center are parties to a collective bargaining agreement ("CBA"), effective from October 23, 2004 through October 22, 2007. See Complaint, Exhibit 1. Article 14 of the CBA requires just cause for discipline:

> Section 14.1 Discipline. The Union recognizes the Medical Center's right to discharge, suspend, demote or otherwise discipline an RN *for just cause*. In the event of Medical Center action in such cases, the Union and the RN shall be limited to the right to present the case solely as a grievance under the grievance procedure. Except in case of aggravated misconduct, no RN shall be discharged without first being given appropriate *progressive discipline*.

See Complaint, Exhibit 1.

Article 15 of the collective bargaining agreement contains a mechanism for resolving grievances. Section 15.1, Step 5 of the agreement provides that in the event that the parties cannot come to a satisfactory agreement on a grievance, an impartial arbitrator will be selected by the parties to resolve the dispute. The CBA provides that the impartial arbitrator's decision shall be final and binding on all parties. Section 15.1, Step 5 states further that "[t]he Arbitrator shall not have the power to add to, subtract from, or modify in any way the terms of this Agreement or to substitute her or his discretion for that of the Medical Center in matters of discipline . . ."

Cathy Schleef was employed by the Medical Center as a staff nurse from 1981 until 1992, and then as a Nurse Practitioner from 1992 until her date of discharge on February 14, 2005. Schleef is a member of the bargaining unit represented by UFCW Local 655.

Schleef was last employed by the Medical Center as a Nurse Practitioner in the Neonatal Intensive Care Unit (NICU). She has consistently been recognized as an excellent practitioner.

The initial collective bargaining agreement between Local 655 and the Medical Center expired on its face on October 22, 2004. They were unable to reach agreement on a new collective bargaining agreement. On December 15, 2004 at 5:00 a.m. Local 655 went on strike. The level of participation in areas such as Labor and Delivery and the NICU was overwhelming: nearly 100% of the Labor and Delivery RNs and nearly 85% of the NICU nurses honored the picket line. The strike continued to January 21, 2005.

With the resolution of the strike, striking nurses were called back into work. Schleef was the notable exception. Instead of returning to work, Schleef was notified by the Medical Center on January 31, 2005 that she was being suspended. On February 14, 2005, the Medical Center discharged Schleef for statements she made to the media and others in the context of the strike, both prior to and during the strike.

Local 655 filed a grievance and an unfair labor practice on behalf of Schleef. Pursuant to both, the matter was eventually submitted to arbitration before an arbitrator mutually chosen by the parties, Joseph Nitka. Beginning on October 6, 2005, and continuing for several days over approximately five months, UFCW Local 655 and the Medical Center arbitrated the discharge grievance. Both parties had a full opportunity to present their positions and raise any issues at the hearing. Neither party challenged the authority or jurisdiction of the arbitrator. Thereafter, both parties submitted briefs.

On August 14, 2006, Arbitrator Nitka issued an award sustaining UFCW Local 655's grievance and ordering that the Medical Center reinstate Schleef and reimburse

Schleef for all lost wages except an eight month suspension. In so doing, Arbitrator Nitka painstakingly applied the parties' collective bargaining agreement to the facts at hand. *See* Exhibit 2 to the Complaint.

Since that time, the Medical Center has refused to reinstate Schleef, who has now been discharged for approximately 19 months. The Medical Center has also failed to make Schleef whole for all salary, wages, and other benefits she lost by reason of being discharged, less her eight month suspension, as reflected by the Arbitration Award.

The Medical Center has not filed suit to vacate the Arbitration Award. Conversely, after openly "exploring its options," a statement several Medical Center staff made when asked when Schleef would return to work, the Medical Center contacted Local 655 on September 1, 2006 and scheduled a pre-return to work meeting for September 7, 2006. The Medical Center then cancelled that meeting on September 7, 2006, shortly after reporting to other staff that Schleef would *not* be placed on the four-week schedule being issued on September 10, 2006. The Medical Center's refusal to comply with the Arbitration Award is groundless, without justification, and in bad faith.

The Medical Center is currently understaffed in the position Schleef held and to which the Arbitrator ordered that Schleef be reinstated. Indeed, the Medical Center currently has posted open positions for NICU Nurse Practitioner. In this way, the Medical Center's refusal to reinstate Schleef willfully places the other NICU staff in the untenable position of caring for patients without the necessary staff.

The Medical Center's refusal to comply with the Arbitration Award at issue is also part of a continuing series of blatant violations of the collective bargaining agreement, such as:

- refusing to comply with an arbitration award concerning union security, which resulted in litigation to enforce the award in Case No. 4:04CV00480 CDP. UFCW Local 655 prevailed in that lawsuit, both at the district court level and through appeal to the Eighth Circuit Court of Appeals, Case No. 05-4316.

- refusing to permit the Union to choose its own Business Representatives to service the bargaining unit. The Medical Center recently lost an arbitration over its refusal to provide access to a Union business representative. Another grievance arbitration on the issue is still pending.

There is currently pending before the National Labor Relations Board (NLRB) a petition to decertify Local 655. The Medical Center's current refusal to reinstate Schleef has an immediate and potent impact on the bargaining unit, chilling them from asserting their federally-protected rights because of the appearance that the contractual mechanism for protecting those rights — the grievance-arbitration process — is a meaningless, hollow formality. This impact further adversely impacts Local 655's position in the decertification proceeding, which could result in leaving the current bargaining unit without representation in negotiating with the Medical Center.

### III. Argument

A. **Local 655 Is Entitled To an Injunction Enforcing the Arbitration Award**

The application of injunctive relief to a suit to enforce a labor arbitration award appears to be a matter of first impression in the Eighth Circuit. As confirmed by the Fourth Circuit Court of Appeals, that matter is governed by the Norris-LaGuardia Act (NLGA) at 29 U.S.C. § 107, which restricts the right of courts in granting injunctive relief in labor disputes. In pertinent part, the NLGA provides:

> No court of the United States shall have jurisdiction to issue a temporary or permanent injunction in any case involving or growing out of a labor dispute . . . except after hearing the testimony of witnesses in open court ( with opportunity for cross-examination) in support of the

> allegations of a complaint made under oath, and testimony in opposition thereto, if offered, and except after findings of fact by the court, to the effect —
>
> > (a) That unlawful acts have been threatened and will be committed unless restrained or have been committed and will be continued unless restrained;
> > (b) That substantial and irreparable injury to complainant's property will follow;
> > (c) That as to each item of relief granted greater injury will be inflicted upon complainant by the denial of relief than will be inflicted upon defendants by the granting of relief;
> > (d) That complainant has no adequate remedy at law; and
> > (e) That the public officers charged with the duty to protect complainant's property are unable or unwilling to furnish adequate protection.

29 U.S.C. § 107; District 17, United Mine Workers of America v. Apogee Coal Co. (Apogee Coal), 13 F.3d 134, 136 (4th Cir. 1993).

In addition, injunctive relief can only be awarded following an evidentiary hearing in open court and the posting by the Union of any security the Court deems proper. District 17, United Mine Workers of America v. A & M Trucking, Inc. (A & M Trucking), 991 F.2d 108, 111 (4th Cir. 1993) (remanding motion for injunctive relief to enforce arbitration award prohibiting subcontracting because the district court failed to fully satisfy the procedural requirements of the NLGA). Plaintiff is ready and willing to present evidence in open court. The Local 655 is also prepared to post whatever security the Court deems proper, although Local 655 submits that it would be most appropriate for the Court to enter a finding that no security is necessary, since the Medical Center cannot be financially harmed by being ordered to reinstate a competent nurse when it is short-handed and when it has already been ordered by an arbitrator to reinstate her.

As set forth in detail below, Local 655 has satisfied this standard. The evidence discussed below clearly demonstrates 1) the unlawfulness of Schleef's discharge (as established by final and binding arbitration) and of the Medical Center's refusal to promptly reinstate her; 2) that failure to issue an injunction would irreparably harm Local 655 by frustrating the arbitration process by rendering useless the arbitrator's award, chilling bargaining unit members from exercising their federal rights, making it more likely they will decertify their union, leaving them without representation and causing them to work in an understaffed environment because of their employer's willful refusal to reinstate Schleef in compliance with the collective bargaining agreement; 3) that the balance of harm favors the issuance of the TRO; and 6) that public officers of the city and county cannot stop these injuries from occuring. In addition, the Union has a significant likelihood of success on the merits of this litigation in light of the federal deference to arbitration awards.

### B. Local 655 Satisfies the NLGA Requirements

**1.    An Unlawful Act Has Occured and Will Continue to Occur Without an Injunction.**

There is no doubt that the grievance filed on behalf of Schleef was subject to the mandatory arbitration procedures of the parties' CBA. As discussed above, Article 14 restricts the Medical Center to discharging RNs only for just cause. <u>Complaint</u>, Exhibit 1. Article 15, Section 15.2 of the CBA permits the Union to file a grievance on behalf of Schleef. The Medical Center did not dispute the arbitrator's jurisdiction to hear this dispute. The Medical Center's refusal to comply with the award, however, directly violates §301 of the LMRA and the federal law pro-arbitration policy. Accordingly, by

7

refusing to promptly reinstate Schleef, the Medical Center has committed an unlawful act, which is likely to continue unabated for months absent injunctive relief.

### 2. Substantial and Irreparable Injury Will Occur Absent an Injunction.

National labor policy has long favored labor-arbitration as a means for resolving disputes. In furtherance of this policy, judicial review of an arbitration award is "extremely narrow." Trailmobile Trailer, LLC, v. Local Union No. 1149, 223 F.3d 744, 746 (8th Cir. 2000); *see also*, Baravati v. Josephthal, Lyon & Ross, Inc., 28 F.3d 704, 706 (7th Cir. 1994) ("Judicial review of arbitration awards is tightly limited; perhaps it ought not be called 'review' at all."). As the Supreme Court explained in United Paper Workers Int'l Union v. Misco, 484 U.S. 29 (1987):

> Courts thus do not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts. . . . [A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision.

So long as the arbitrator's award "draws its essence" from the collective bargaining agreement, it must be enforced. United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593 (1960).

Based on this policy favoring arbitration, district courts are empowered to grant injunctive relief to enjoin conduct that would render the arbitrable process futile. *See e.g.,* Boys Markets Inc. v. Retail Clerks Union, Local 770, 398 U.S. 235 (1970); Apogee Coal, 13 F.3d 134; A & M Trucking, 991 F.2d 108. In Apogee Coal, the District Circuit for the Southern District of West Virginia issued a temporary restraining order and preliminary injunction requiring employer Apogee Coal to immediately reinstate terminated employee James McCoy in compliance with an arbitrator's award. The

8

Fourth Circuit vacated and remanded the matter to the district court for review under the appropriate standard — i.e., under the Norris-LaGuardia Act — nevertheless indicating that injunctive relief to enforce an arbitration award may be appropriate to further the federal goal for swift and final resolution of labor disputes through arbitration. Id. at 137-138.

The current dispute is riper for injunctive relief than the dispute in Apogee Coal for at least two reasons. First, the Medical Center cannot point to any of the limited exceptions to the arbitral deferral for support of its failure to promptly reinstate Schleef. Second, as previously noted, the Medical Center's refusal to promptly reinstate Schleef occurs in the context of a decertification petition against the Union, making it all the more critical that the union membership see that the arbitration process an provide swift and final resolution and, therefore, is not merely a "hollow formality."

By virtue of refusing to reinstate Schleef in compliance with the Arbitrator's award, defendant has breached the CBA with plaintiff and is in violation of 29 U.S.C. §301. Schleef was discharged approximately 19 months ago. It took almost 18 months to process her grievance to culmination. The Medical Center has failed and refused to reinstate Schleef for almost one month since that award, or to commit to the Union a date on which it will reinstate her. This kind of delay makes an arbitrator's award almost meaningless. Furthermore, the Medical Center's continuing failure to reinstate Schleef in compliance with the Arbitrator's award would naturally chill the assertiveness of any bargaining unit member by leading employees to believe the grievance process is futile. This, in turn, will make it more likely that the bargaining unit will vote to decertify their Union, leaving the bargaining unit without any representation.

In addition, by its own loud and repeated representations, the Medical Center is understaffed with nurses. Currently, the Medical Center has posted openings for Nurse Practitioners to staff its NICU unit, the very job that Schleef performed when employed there. By failing to fill this position, the Medical Center is willfully imposing upon the bargaining unit represented by Local 655 a stressful environment in which they must work without adequate staff resources.

For these reasons, the Medical Center's ongoing breach cannot be cured by a judgment issued many months or years in the future. The Union asserts that the above-discussed frustration of the arbitral process and the impact on the rights of the Union and its members constitute irreparable harm.

**3. Greater Injury Will Occur Without Injunctive Relief Than With Injunctive Relief**

Local 655 asserts that the balance of harms clearly supports the granting of the TRO. First, the Union has a substantial likelihood of success on the merits. In the present case, there are simply no factors supporting vacating of the Arbitrator's Award. Arbitrator Nitka clearly based his Award on factors within the four corners of the collective bargaining agreement, specifically citing and relying on the standard criteria for just cause. Nor is there any public policy argument that would warrant the Medical Center's refusal to reinstate Schleef. Schleef was discharged for statements she made in the context of a labor dispute with the Medical Center, not for any conduct relating to her provision of quality nursing care. Thus, the likely final result of this litigation will be the same as the result the Union is requesting that the Court impose here on a temporary basis.

Second, although the Union and its members will suffer clear harm from the refusal to immediately reinstate Schleef, the Medical Center will not suffer any harm in permitting Schleef to serve as a Nurse Practitioner until this litigation has fully concluded. In this regard, the Medical Center has never disputed Schleef's excellence as a Nurse Practitioner.

Third, the public good and the public policy articulated in the Labor Management Relations Act, as amended, 29 U.S.C. §§ 151 et seq. will be advanced by the grant of injunctive relief. As is pointed out above, the Supreme Court has repeatedly endorsed arbitration as the preferred method to resolve labor disputes under collective bargaining agreements. In addition, the public good will be promoted by restoring to the community a highly-skilled NICU Nurse Practitioner into an understaffed hospital.

**4.     Plaintiff Has No Adequate Remedy at Law.**

The plaintiff in this lawsuit is a labor organization, Local 655. Its direct interests are not in money — such as the back pay that Arbitrator Nitka awarded to Schleef, which will go to Schleef. Rather, its direct interests are in protecting the rights of the bargaining unit and showing the bargaining unit that the parties' grievance-arbitration process is not futile.

The Medical Center's continuing failure to reinstate Schleef in compliance with the Arbitrator's award creates harms that cannot be remedied by monetary damages. These harms include chilling the assertiveness of any bargaining unit member by leading employees to believe the grievance process is futile; and making it more likely that the bargaining unit will vote to decertify their Union (due to disenchantment with the efficacy of the grievance-arbitration process), leaving the bargaining unit without any representation.

Local 655 is left with no adequate remedy at law. The only remedy that can effectuate relief for the union is injunctive relief requiring the Medical Center to immediately reinstate Schleef pending final resolution of this litigation.

**5.      Public Officers Cannot Protect Plaintiff's Interest.**

City and county police, politicians and other public officers are powerless to require the Medical Center to reinstate Schleef and to otherwise comply with the award of Arbitrator Nitka and other arbitrators. Local 655's only recourse in this matter is the federal judiciary and its power to award injunctive relief.

## CONCLUSION

For the above reasons, Local 655 requests that this Court issue a TRO, and then a preliminary injunction, requiring the Medical Center to immediately reinstate Cathy Schleef to the position of NICU Nurse Practitioner.

Respectfully submitted,

/s/ Sherrie A. Schroder
SHERRIE A. SCHRODER,   #4307
JANINE M. MARTIN, #55240
HAMMOND, SHINNERS, TURCOTTE,
LARREW and YOUNG, P.C.
7730 Carondelet Avenue, Suite 200
St. Louis, Missouri 63105
(314) 727-1015 (Telephone)
(314) 727-6804 (Fax)
saschroder@hstly.com (E-mail)
jmartin@hstly.com  (E-mail)

Attorneys for UFCW Local No. 655

## CERTIFICATE OF SERVICE

I hereby certify that on September 11, 2006, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon the following: none

I hereby certify that on September 11, 2006, the foregoing was hand delivered to the following:

Michael Lowenbaum
Lowenbaum Partnership, L.L.C.
222 South Central Avenue, Suite 901
St. Louis, MO 63105

/s/ Sherrie A. Schroder