UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

UNITED FOOD AND COMMERCIAL )
WORKERS UNION LOCAL NO. 655, )
                                   )
        Plaintiff, )
                                   )
v. )              No. 4:06CV01345 CDP
                                   )
ST. JOHN'S MERCY HEALTH SYSTEM )
d/b/a ST. JOHN'S MERCY MEDICAL )
CENTER, )
                                   )
        Defendant. )

## DEFENDANT'S MEMORANDUM OF LAW
## IN SUPPORT OF DEFENDANT'S
## MOTION TO DISMISS AND
## IN OPPOSITION TO PLAINTIFF'S
## MOTION FOR TEMPORARY RESTRAINING ORDER
## AND PRELIMINARY INJUNCTION

COMES NOW Defendant, St. John's Mercy Health System d/b/a St. John's Mercy Medical Center "Medical Center"), by and through its attorneys, and files its Memorandum of Law In Support of Defendant's Motion to Dismiss and in Opposition to Plaintiff's Motion for Temporary Restraining Order, by stating as follows:

## STATEMENT OF THE CASE

On or about September 8, 2006, Plaintiff initiated this action by the filing of a one-count Complaint for injunctive relief to enforce an arbitration award. In its Complaint, Plaintiff, a Union which represents a number of Defendant's workers, alleges that Defendant has failed to comply with an August 14, 2006 Award issued by Arbitrator Nitka and seeks injunctive relief compelling Defendant to comply with said Award. (See Plaintiff's Complaint). On September 11, 2006, subsequent to the filing of the Complaint, Plaintiff filed a Motion for

Issuance of Temporary Restraining Order and Preliminary Injunction and a Memorandum of Law in Support thereof. In its Memorandum of Law, Plaintiff, correctly, states that the matter at issue is a labor dispute and, thus, that it is entitled to injunctive relief under 29 U.S.C. § 107, the Norris-Laguardia Act. Plaintiff's Complaint, however, fails to allege conduct which would entitle it to injunctive relief in the very limited circumstances provided for under 29 U.S.C. § 107. As such, and as will be demonstrated herein below, Plaintiff's Complaint should be dismissed in its entirety. In the alternative, absent outright dismissal, Plaintiff's Motion for Issuance of Temporary Restraining Order and Preliminary Injunction must be denied.

## RELEVANT FACTS

### A.     Background.

Defendant Medical Center employs approximately 5,200 employees, of which approximately 1,900 are registered nurses ("RNs"). (Ex. A, ¶2).[1] At all relevant times, Plaintiff United Food & Commercial Workers Union Local No. 655 ("Union"), a labor organization, has been the exclusive representative for purposes of collective bargaining of the Medical Center's RNs. (Ex. A, ¶2).

Since the first collective bargaining agreement ("CBA") was executed between the Medical Center and Union, the Union has filed or processed well over seven-hundred (700) grievances on behalf of bargaining unit employees. (Ex. A, ¶3). The Union chose to advance over 20 of those grievances to arbitration, of which eight (8) were discharge cases. (Ex. A, ¶3). The Union was able to obtain either a monetary settlement or reinstatement in seven (7) of those cases. (Ex. A, ¶3). One discharge case resulting in a reinstatement order involved a bargaining unit nurse, Karen Prade ("Prade"), who had left the Medical Center on a special leave of absence

---

[1] Exhibit A shall refer to the Affidavit of Chris Carter, Labor Relations Manager of Defendant, which Affidavit is submitted herewith.

to work as an organizer for the Union at other hospitals around the country. (Ex. A, ¶4). Prade was reinstated over two (2) months after the issuance of the arbitrator's award reinstating her. (Ex. A, ¶4). The Union made no claim of irreparable harm surrounding the timeframe of Prade's reinstatement. (Ex. A, ¶4).

On January 20, 2005, a bargaining unit employee filed a decertification petition with the National Labor Relations Board ("NLRB"). (Ex. A, ¶5; Ex. B). Further processing of the petition was immediately blocked by the NLRB and has remained blocked to date. (Ex. A, ¶5; Ex. C). A decertification petition requires a showing of interest, or signatures, from at least thirty percent (30%) of the bargaining unit at the time it is filed. (Ex. A, ¶5). A petition without the requisite showing of interest would be dismissed and the decertification petition filed on January 20, 2005 has not been dismissed. (Ex. A, ¶5).

On March 7, 2006, the President of the Union asked bargaining unit employees to join the Nurse Alliance of the Service Employees International Union ("SEIU"). (Ex. A, ¶6; Ex. D). The SEIU and UFCW Local 655 are separate and distinct labor organizations. (Ex. A, ¶6). Sometime in June 2006, the Union ceased holding meetings for bargaining unit nurses at the Union's facility, and directed the bargaining unit members to call the SEIU with questions in the future. (Ex. A, ¶6; Ex. E). Cathy Schleef identifies herself as a "union organizer" for the SEIU. (Ex. A, ¶6; Ex. F).

Grievances have continued to be filed and processed since August 15, 2006. (Ex. A, ¶7).

## B.   Cathy Schleef's Grievance And Arbitrator Nitka's Award.

Cathy Schleef ("Schleef"), an employee of the Medical Center who, at all relevant times, was represented for purposes of collective bargaining by the Union, was terminated from her employment with the Medical Center on February 14, 2005. (Ex. A, ¶8; Union Ex. 2(a)).

3

Pursuant to the grievance-arbitration procedure in the CBA, the Union filed a grievance challenging Schleef's discharge. (Ex. A, ¶8; Union Ex. 1(a)).The grievance was processed through arbitration and, on August 14, 2006, Arbitrator Joseph Nitka entered an Award wherein he concluded that, although the Medical Center did have just cause to discipline Schleef for having an improper interaction with a patient and being disloyal to the Medical Center by attacking the quality of care at the Medical Center, the discharge discipline was too severe under the circumstances (Ex. A, ¶8; Union Ex. 2(a)). Arbitrator Nitka's Award provides for partial back pay and reinstatement, but does not provide the time frame during which reinstatement must occur, the manner of reinstatement required nor a specific position to which Ms. Schleef must be reinstated (Ex. A, ¶8; Union Ex. 2(a)).

In accordance with Arbitrator Nitka's Award, the Medical Center met with Schleef and a Union business representative on September 11, 2006 and informed Schleef she was reinstated effective that day (Ex. A, ¶9). During the September 11, 2006 meeting, Schleef was advised that she would be contacted by September 15, 2006 with regard to the position to which she would be assigned to return and that she would be fully compensated, as if she were working as a neonatal nurse practitioner, until her actual return to work (Ex. A, ¶9). Further, during the September 11, 2006 meeting, Schleef was offered the opportunity to review a back pay calculation prepared by the Medical Center, complete certain paperwork necessary for her to return to work and the opportunity to obtain a new I.D. badge (Ex. A, ¶9). Despite these requests by the Medical Center on September 11, 2006, Schleef refused to review the back pay calculation, refused to get a new I.D. badge, and refused to process the necessary paperwork (Ex. A, ¶9).

Pursuant to the request of Schleef and the Union, the Medical Center again met with Schleef and Union representative Nancy Dobbs on September 12, 2006 regarding Schleef's

4

reinstatement of September 11, 2006. (Ex. A, ¶10). During the September 12, 2006 meeting, Schleef agreed to process the necessary paperwork, obtain a new I.D. badge and discuss the back pay calculation. (Ex. A, ¶10). The Medical Center has committed to schedule Schleef to perform work at the Medical Center by Monday, September 18, 2006. (Ex. A, ¶10).

## ARGUMENT

## B. The District Court Does Not Have Jurisdiction And The Complaint Must Therefore Be Dismissed.

The Norris-Laguardia Act (NGLA), 29 U.S.C. Section 101, provides, in no uncertain terms: "No court of the United States...shall have jurisdiction to issue any restraining order or temporary or permanent injunction in a case involving or growing out of a labor dispute..." Seemingly at odds with that provision, Section 301 of the Labor Management Relations Act, 29 U.C.S. Section 185 favors access to a judicial forum to resolve disputes involving the application and interpretation of collective bargaining agreements. However, when the parties have an agreed upon method for the adjustment of their disputes, such as a final and binding grievance and arbitration provision, judicial remedies, including injunctions, are generally not available. *Buffalo Forge Co. v. United Steelworkers*, 428 U.S. 397, 411-412 (1976).

In *Boys Markets, Inc. v. Retail Clerks Union, Local 770*, 398 U.S. 235 (1970), the Supreme Court carved out a very narrow exception whereby an employer could seek an injunction against a union despite the presence of a final and binding grievance and arbitration provision in the parties' collective bargaining agreement. Under the *Boys Markets* exception, an injunction could be granted only where the union engaged in a strike in violation of a no-strike clause in the parties' agreement and the harm done to the employer while waiting for the arbitration process to be completed would be so irreparable as to render that process a "hollow

formality." *Buffalo Forge, supra*, limited *Boys Markets*, by holding that sympathy strikes and safety strikes, although in violation of a contractual no-strike provision, could not be enjoined.

*Boys Markets* has not been extended to allow an employer to seek an injunction against a union except in these very limited strike situations.

Certain district courts have held that, in very limited circumstances, a union may seek an injunction against an employer pending arbitration of a labor dispute. Such injunctions have become known as "reverse *Boys Markets*" injunctions, and have been granted *only* under very extraordinary circumstances, where the court has found that the injunction is necessary to prevent the arbitral process from becoming a "hollow formality" or "meaningless ritual." *Aeronautical Industrial District Lodge 91 of the International Association of Machinists v. United Technologies Corp., Pratt & Whitney*, 230 F.2d 569 (2nd Cir. 2000).

Courts have consistently held that the arbitral process is rendered meaningless or hollow *only* if any arbitral award in favor of the union would substantially fail to undo the harm occasioned by the lack of an injunction. *Niagara Hooker Employees Union v. Occidental Chemical Corporation*, 935 F.2d (2nd Cir. 1991). The arbitral process is *not* rendered meaningless, however, by the inability of the arbitrator to completely restore the *status quo ante* or by some interim damage that is irremediable. *Niagara Hooker, supra*. For example, courts have consistently held that while a wrongly discharged employee may suffer some damage that is not compensated by contract remedies (for example repossessions, foreclosures, and injury to credit status), an injunction in a discharge situation is wholly inappropriate. *Local Lodge No. 1266 v. Panoramic Corp.*, 668 F.2d 276, 285 fn. 12 (7th Cir. 1981). Instead, for an injunction to issue in favor of a union, "the irremediable injury in question must be such as to threaten the integrity of the arbitration process itself." *Niagara Hooker*, supra.

6

In reviewing the cases where a "reverse *Boys Markets*" injunction has been granted, it is clear that this extraordinary remedy is reserved *solely* for relocation and closing situations where a large number of employees' jobs are threatened and the employer's conduct would be rendered a *fait accompli* such that an arbitral award would simply be meaningless. Even so, in situations where an employer's actions in selling or relocating all or part if its business would result in the permanent layoff of hundreds or even thousands of employees, courts have been reticent to issue a "reverse *Boys Markets*" injunction in light of the very strong presumption in favor of deferral to the parties' grievance and arbitration procedure.

In *United Food and Commercial Workers Union, Local No. 626*, (6th Cir. 1985), the Court of Appeals denied the union's motion for injunctive relief where the employer sought to close three grocery stores when the union represented the employer's meat and seafood employees. The court held that the union failed to demonstrate the requisite "irreparable harm," and found that an arbitrator could award damages if it was found that the employer had violated the agreement. Similarly, in *Communication Workers of America v. Verizon New York Inc., et. al.*, 171 L.R.R.M. 2487 (S.D.N.Y. 2002), the court held that the employer's potential layoff of 3000 employees was not enjoinable where the arbitrator could order back pay and reinstatement should he find merit to the underlying grievance.

Unions have sought to obtain "reverse *Boys Markets*" injunctions in situations other than the relocation or closing of an employer's facility, but have been wholly unsuccessful. In *Niagara Hooker*, supra, the employer unilaterally instituted a random drug testing policy. While the district court preliminarily enjoined the employer's conduct, the Appellate Court reversed, holding that the interim implementation of the drug testing policy did not render the arbitral process futile. Similarly, in *Cleveland Area Local, American Postal Workers Union, v. United*

*States Postal Service*, 968 F.2d 1199 (N.D. Oh. 1997), the union's motion for injunctive relief regarding its failure to reinstate employees who were determined to be physically fit to return to work was denied when the court held that the situation did not fall within the "reverse *Boys Markets*" exception and therefore the court did not have jurisdiction over the case.

In addition to the fact the Eighth Circuit has never entered a "reversed *Boys Markets*" injunction, it is clear the facts in the instant case do not fall within the parameters of such an injunction. A "reverse *Boys Market*" injunction is not appropriate in the instant case insofar as the Union is not seeking a status quo injunction and the facts at issue do not involve a relocation or closure. As such, the Court does not have jurisidiction over this matter and the Complaint must be dismissed.

**B.      The Complaint Must Be Dismissed Insofar As Plaintiff Cannot Prove The Facts Necessary To Obtain An Injunction In Accordance With 29 U.S.C. 107**

In light of the foregoing, as Plaintiff concedes, in order to obtain injunctive relief in the setting of a labor dispute, Plaintiff must meet the requirements of 29 U.S.C. § 107 of the Norris-Laguardia Act. In this regard, there are numerous factors which must be proven by the Plaintiff in order for the Court to enter an injunction under the Norris-Laguardia Act. Specifically, as noted by Plaintiff in its Memorandum in Support of its Motion for an Issuance of Temporary Restraining Order and Preliminary Injunction, the Norris-Laguardia Act, 29 U.S.C. § 107, which restricts the right of courts in granting injunctive relief in labor disputes, provides, in pertinent part, as follows:

> No court of the United States shall have jurisdiction to issue a temporary or permanent injunction in any case involving or growing out of a labor dispute . . . except after hearing the testimony of witnesses in open court (with opportunity for cross-examination) in support of the allegations of a complaint made under oath, and testimony in opposition thereto, if offered, and except after findings of fact by the court to the effect –

(a) that unlawful acts have been threatened and will be committed unless restrained or have been committed and will be continued unless restrained;

(b) that substantial and irreparable injury to complainant's property will follow;

(c) that as to each item of relief granted greater injury will be inflicted upon complainant by the denial of relief that will be inflicted upon defendants by the granting of relief;

(d) that complainant has no adequate remedy at law; and

(e) that a public officer is charged with the duty to protect complainant's property are unable or unwilling to furnish adequate protection.

29 U.S.C. § 107.

The facts at issue in the instant case do not rise to the level of "unlawful acts" controlled by the Norris-Laguardia Act and, thus, Plaintiff's Complaint must be dismissed. Moreover, even assuming, *arguendo,* the dispute at issue in the instant case is the type of dispute subject to injunctive relief under the Norris-Laguardia Act, it is clear Plaintiff cannot establish the factors necessary for a court to grant injunctive relief.

1.    **Plaintiff Cannot Prove that Unlawful Acts Have Been Threatened and Will Be Committed Unless Restrained Or Have Been Committed and Will Be Continued Unless Restrained.**

In the instant case, Plaintiff cannot prove that "unlawful acts" have either been threatened or committed. The phrase "unlawful acts" contained in 29 U.S.C. § 107(a) does not include a party's failure to comply with an arbitration award, as alleged in the instant Complaint. Rather, as noted by the Fifth Circuit, in *Brotherhood of Railroad Trainmen Local Lodge No. 721, et al. v. Central of Georgia Railway Company*, 229 F.2d 901 (5th Cir. 1956):

> It is plain from the language and the context that the words 'unlawful acts' mean violence, breaches of the peace, criminal

9

acts, etc., and that such terms do not include, they do not constitute a general reference to, anything that may be considered illegal but apply specifically to the acts of violence which authority is calculated to control.

Id. citing *Wilson & Co. v. Birl*, 105 F.2d 948 (3rd Cir. 1939), *Carter v. Herrin Freight Lines, Inc.*, 131 F.2d 557 (5th Cir. 1942) and 43 C.J.S., Injunctions, § 138, p. 702. See also *Marine Transp. Lines, Inc. v. Int'l Org. of Masters, Mates & Pilots*, 770 F.2d 1526, 1530 (11th Cir. 1985) (suggesting that unlawful acts may be limited to things akin to violence, intimidation, threats, vandalism, breaches of the peace and criminal acts; *East St. Louis Laborers Local 100 v. Bellon Wrecking & Salvage Co.*, 414 F.3d 700, 708 (7th Cir. 2005). In other words, the provisions of the Norris-Laguardia Act upon which Plaintiff relies are limited to circumstances involving criminal acts - circumstances not present in the instant case. As such, Plaintiff cannot prove the first element essential to obtaining injunctive relief under the Norris-Laguardia Act.

In addition to the foregoing, even assuming the conduct at issue in the instant case rises to the level of an "unlawful act" as contemplated by the Norris-Laguardia Act, Plaintiff cannot prove that such acts have either been threatened or committed. In this regard, contrary to Plaintiff's assertions, the undisputed facts establish that Schleef was reinstated effective September 11, 2006, that she is being provided the appropriate back pay and that she is physically being returned to work no later than September 18, 2006. In other words, although the wheels are still in motion, Defendant is complying, fully, with the Award of Arbitrator Nitka. Schleef is receiving pay and full benefits as an active employee consistent with the reinstatement. Whether or not the Medical Center insists on requiring Schleef to earn her pay and benefits by actually working at this facility is a decision for the Medical Center. Schleef, by her reinstatement without being scheduled for any immediate shifts to work, has received the added bonus of a vacation. There is simply nothing in Arbitrator Nitka's Award requiring the

Medical Center to schedule Schleef to work for her pay. The Medical Center, like any employer, has the clear right to waive its right to require employees to perform services for the employer in order to receive pay and benefits.

Although approximately four (4) weeks have passed since the date of Arbitrator Nitka's Award, it should be noted that Arbitrator Nitka's Award does not specify a date by which Schleef must be returned to work. In addition, the speed at which Defendant has moved to reinstate Schleef is reasonable under the totality of the circumstances and as a matter of law. In this regard, Defendant has the right to file a suit to vacate Arbitrator Nitka's Award and has a period of ninety (90) days following the date of issuance in which to do so. *United Parcel Service, Inc. v. Mitchell*, 451 U.S. 56 (1981); *Local 2, IBEW v. Anderson Underground Construction, Inc.*, 907 F.2d 74 (8th Cir. 1990). Stated more simply, Defendant's failure to reinstate Schleef in a more expeditious manner can hardly be considered unlawful given the fact it still has in excess of sixty (60) days in which to file a suit to vacate the Arbitrator's Award, and has the legal right to refrain from complying with the Award while deciding whether to challenge it.

In summary, no "unlawful acts" have been threatened or committed. Moreover, the issue presented by Plaintiff is moot given the fact Schleef has been reinstated.

## 2. Plaintiff Cannot Prove That Substantial and Irreparable Injury To Plaintiff's Property Will Follow.

### a. Plaintiff's Reliance on *Apogee Coal* Is Misplaced.

In Plaintiff's Memorandum in Support of its Motion for Issuance of a Temporary Restraining Order and Preliminary Injunction, Plaintiff relies upon the case of *District 17, United Mineworkers of America v. Apogee Coal Co.*, 13 F.3d 134 (4th Cir. 1993) for the proposition that Plaintiff will suffer substantial and irreparable injury absent an injunction. Plaintiff's reliance on

11

*Apogee Coal*, however, is misplaced. In this regard, Plaintiff cites to *Apogee Coal* for the proposition that injunctive relief under the Norris-Laguardia Act is appropriate to enforce an arbitration award (Plaintiff's Memorandum in Support of its Motion for Issuance of Temporary Restraining Order and Preliminary Injunction, pp. 8 and 9). Contrary to the assertions set forth in Plaintiff's Memorandum, the *Apogee Coal* court specifically noted that the enforcement of an arbitration award "is not best resolved through the entry of a preliminary injunction; rather, the parties desire and are entitled to finality in a timely manner." Id. at 137. The *Apogee Coal* court stated that "district courts should establish an expedited schedule for consideration of petitions to enforce or set aside arbitration awards that will obviate the need for parties to seek preliminary relief." Id. at 138, fn. 5. In other words, contrary to Plaintiff's argument and interpretation of the *Apogee Coal* case, the *Apogee Coal* court clearly found that an expedited suit to vacate or enforce an arbitration award under Section 301 of the Labor and Management Relations Act is the appropriate avenue, as opposed to the injunctive relief sought by Plaintiff in the instant case, for resolving a dispute pertaining to compliance with an arbitrator's award.

Not only does the *Apogee Coal* decision suggest that a suit to enforce under Section 301 of the Labor and Management Relations Act is the most appropriate method for resolving this dispute, but the history between the instant Plaintiff and Defendant is further validation of this fact. In this regard, the parties to the instant action were opponents in another matter before this same Honorable Court wherein the Union brought an action to enforce an arbitration award against the Medical Center. *United Food & Commercial Workers Union Local No. 655 v. St. John's Mercy Health Systems,* 448 F.3d 1030 (8th Cir. 2006). Unlike the instant case, in the prior case, the Union brought suit under § 301 of the Labor and Management Relations Act, seeking enforcement of an arbitration award and did not seek injunctive relief. The District Court in the

prior case entered summary judgment in favor of the Union, thereby enforcing the award of the arbitrator. *United Food & Commercial Workers Union Local No. 655 v. St. John's Mercy Health Systems*, 2005 WL 2333922 (E.D. MO). Simply stated, the history between the two parties to the instant action clearly establishes that injunctive relief is not necessary to enforce an arbitration award and that substantial and irreparable injury can be avoided by exercising one's right to seek enforcement of an arbitrator's award through the proper channels.

In addition to the foregoing, the undisputed facts of the instant case clearly establish that the Union will not suffer substantial and irreparable injury to its property absent the entry of a temporary restraining order and/or a preliminary injunction. In this regard, as noted above, Schleef has already been reinstated by Defendant and has been assured she will receive her full back pay.[2]

### b. The Alleged "Chilling Effect" Is Not An Irreparable Injury.

While in some employment contexts the chilling nature of alleged unlawful acts can be irreparable injury justifying a preliminary injunction, that doctrine has not been recognized under 29 U.S.C. § 107 of the Norris-Laguardia Act. *Adam-Mellang v. Apartment Search*, 96 F.3d 297, 301 (8th Cir. 1996). Further, even assuming it did apply to actions brought under the Norris-Laguardia Act, the chilling effect of an employer's conduct is not presumed, but rather "is an issue of fact that the employee seeking a preliminary injunction must prove." Id. at 301. The United States Court of Appeals for the Seventh Circuit has similarly held that "a plaintiff cannot obtain a preliminary injunction by speculating about hypothetical future injuries." *East St. Louis Laborers Local 100 v. Bellon Wrecking & Salvage Company*, 414 F3d 700, 705-706 (7th Cir. 2005). The Seventh Circuit further stressed that there is a difference between a loss that makes

---

[2] It should be noted that through discussions with the Union's counsel, defense counsel has been advised Defendant is complying with the back pay aspect of the Arbitrator Nitka's Award.

the calculation of money damages difficult to calculate and cannot be quantified and one that eludes calculation because it is purely speculative. Id. The Union's purported irreparable harm is both presumed and purely speculative.

The Union will be unable to prove and has failed to allege any facts relating to the alleged chilling effect, but has asked the Court, contrary to the standard, to presume a chilling effect. Contrary to the Union's assertion there is no evidence bargaining unit employees have stopped filing grievances nor proof the Union has been unable to continue to process grievances. The Union has advanced over 20 grievances to arbitration, of which 8 were discharge cases, and won either reinstatement or a cash settlement for the grievants in seven (7) of those cases. The facts of this case, when viewed in the totality of the Union's overall success in arbitrating cases establishes that the purported harm it claims to suffer is unfounded. One of the discharge victories the Union recently won was the reinstatement of grievant Karen Prade who had left the Medical Center on a special three year leave of absence to be a UFCW organizer at hospitals around the country. Ms. Prade was reinstated with full back pay to her position and has continued her strong union advocacy within the Medical Center since her reinstatement. It stretches the bounds of credulity to say that the Union will suffer irreparable harm when the grievant Cathy Schleef has been reinstated with full benefits and even partial back pay, but simply isn't being scheduled to work as of the date of the hearing before the Court. It seems Schleef would be overjoyed to have full pay and benefits without the need to either report to work without using vacation time as she has been able to do for the week of September 11, 2006. The benefit of Schleef performing work at the Medical Center in return for her pay and benefits runs to the Medical Center, not to the Union, and can be waived if it is more beneficial in the eyes of the Employer to have Schleef away from the facility rather than working.

14

**c.** **The Alleged Injury, Assuming It Exists, Is Not Irreparable, As It Can Be Cured By The NLRB.**

Plaintiff cites to the pending decertification petition at the National Labor Relations Board ("NLRB") as the basis for the potential harm that could be caused to the Plaintiff by the alleged chilling nature, but has presented no facts to support this argument. Importantly, the petition was filed on January 20, 2005 and was supported by at least thirty percent (30%) of the bargaining unit represented by the Union pursuant to the NLRB's minimum standards to support the filing of a petition. Obviously the disaffection with the Union could not have been caused by the events of the past three weeks when such a large number of the bargaining unit employees signed a petition to vote on whether to continue to be represented exclusively by the Union over a year ago.

The petition has been blocked from further processing by the NLRB because of allegations the Medical Center had engaged in unfair labor practices and thus the requisite "laboratory conditions" necessary to conduct an election are not present until the NLRB determines either no violation exists or the violations are not sufficient to prevent a free and fair election. The petition has remained blocked and presumably will remain blocked until the Regional Director of the NLRB's St. Louis office determines that a vote free from the coercive effect of any alleged unfair labor practices is possible. Accordingly, even assuming, *arguendo*, that the Medical Center's actions as alleged by Plaintiff have taken place, and assuming those actions have had a "chilling effect", there is no *irreparable* harm to the Plaintiff with respect to the decertification petition because the Regional Director of the NLRB has the authority to block the processing of the petition to an election until that chilling effect has been cured, or dismiss the petition outright. The NLRB Casehandling Manual Part Two Representation Proceedings Sec. 11730.3(c) states:

### 11730.3(c) Charges that Taint an Incumbent Union's Subsequent Loss of Majority Support

These charges can be of any kind, other than a charge that affects the circumstances surrounding the petition or the showing of interest or a charge that involves a general refusal to recognize and bargain with the union. These charges raise the issue of a causal relationship between the violations alleged and the subsequent expression of employee disaffection with an incumbent union. A finding of merit to such a charge and of a causal connection between the violations alleged and the employee disaffection would warrant dismissal of a petition that was filed based upon that disaffection. Sec. 11733.2(a)(3).

(Ex. G).

Congress has vested exclusive jurisdiction in the NLRB to decide such matters as the impact of Employer conduct on the continued ability of a labor organization to represent employees and whether that conduct requires the dismissal of a petition and the granting of a bargaining order or other appropriate relief to remedy the actions of the Employer. Plaintiff's alleged harm is not irreparable as the NLRB has a ready medium to remedy any alleged harm to the status of the Union as the exclusive bargaining representative of the nurses at the Medical Center.

### d. The Union Will Suffer No Injury To Its Status As Bargaining Representative.

The alleged harm the Union purports has been suffered is the damage to its ability as the bargaining representative. Contrary to this claim, it is readily apparent Plaintiff will suffer greater harm by the presence of Schleef at the Medical Center because Schleef is now employed as a union organizer for the Service Employees International Union ("SEIU"), a different union than the Plaintiff. The job of a union organizer is to convince employees to support the organization the representative works for. Schleef would therefore be encouraging employees of the Medical Center to support the SEIU to the detriment of the UFCW. Moreover, it is unclear why the UFCW is so worried about suffering dissatisfaction among the bargaining unit considering its actions in no longer having meetings for the bargaining unit at the UFCW Hall

and instead directing the bargaining unit nurses to attend meetings at the SEIU offices and to call the SEIU offices for assistance. Even more telling is the direct plea made by the President of the UFCW for the bargaining unit nurses to join the SEIU's Nurse Alliance. In conclusion, it seems Plaintiff's concerns over a loss of support among the bargaining unit are not only not based in fact, but are disingenuous in light of the fact it has directed the bargaining unit to join another union, stopped having meetings for bargaining unit employees at the UFCW's facility and instead directed the bargaining unit to direct all future contact to the SEIU.

**3.  Plaintiff Cannot Establish That It Will Suffer Greater Injury By Denial of The Sought After Injunctive Relief Than Will Be Inflicted On The Medical Center By Granting Such Relief.**

At the outset, as noted above, there is simply no injury to the Union insofar as Schleef has been reinstated. Accordingly, Plaintiff cannot demonstrate it will suffer greater injury by the denial of injunctive relief than that which will be inflicted upon the Medical Center by granting such relief.

In addition to the foregoing, the facts will clearly demonstrate that granting the specific injunctive relief sought by Plaintiff will cause greater harm to Defendant than denial of such relief will cause to the Plaintiff. In this regard, to require Defendant to reinstate Ms. Schleef to the specific position of a neonatal nurse practitioner in the Neonatal Intensive Care Unit ("NICU") will serve to deprive Defendant of its clear and unequivocal rights under the terms of the collective bargaining agreement by and between Plaintiff and Defendant. In this regard, Section 7.1 of the collective bargaining agreement, the management rights provision, provides that the Medical Center has "[t]he right to hire, direct, classify, assign, reassign, promote, evaluate, transfer, lay off, reduce hours, set and change hours of employment . . ." Given these broad rights obtained by Defendant in its hard and contentious negotiations including weathering

an almost 6-week strike with Plaintiff, granting the sought after injunctive relief, and ordering Defendant to reinstate Schleef as a neonatal nurse practitioner in the NICU is tantamount to taking away from Defendant one of the rights to which it is clearly entitled under the terms of the collective bargaining agreement. (Ex. A, ¶3). To deprive the Defendant of one of its bargained for rights which substantially hinder Defendant's ability to manage its workforce and operations and would result in substantial harm to the Medical Center. To the contrary, denial of the sought after injunctive relief would result in no harm or injury to the Union.

In light of the foregoing, it is clear the Plaintiff will be unable to prove that it will suffer greater harm if the injunctive relief is denied than that which will be inflicted upon the Medical Center if the injunctive relief is granted.

## 4. Plaintiff Cannot Prove It Has No Adequate Remedy At Law.

Even assuming, *arguendo*, Defendant is not in full compliance with Arbitrator Nitka's Award, which Defendant specifically denies, it is unequivocally clear Plaintiff has an adequate remedy at law. In this regard, as Plaintiff has done in the past, it can file a suit to enforce Arbitrator Nitka's Award under Section 301 of the Labor and Management Relations Act. In addition, to the extent Defendant's alleged non-compliance with Arbitrator Nitka's Award has any impact on the pending decertification petition, as detailed in Section 2 above, there are mechanisms at the National Labor Relations Board through which the Union can obtain full relief. Moreover, to the extent Defendant's alleged non-compliance is the result of a lack of clarity in Arbitrator Nitka's Award, Plaintiff has the ability to seek clarification from the Arbitrator. Finally, the Union can file a grievance under the terms of the collective bargaining agreement and process any disputes regarding Defendant's interpretation or application of the terms of the collective bargaining agreement through the arbitration procedure.

Simply stated, there are numerous avenues other than a TRO or preliminary injunction through which the Union can pursue a full and complete remedy and, thus, Plaintiff cannot prove the absence of an adequate remedy at law. Any and all allegations regarding a loss of support among the bargaining unit is squarely within the jurisdiction of the NLRB. Moreover, to accept the Union's argument would be tantamount to concluding that unions and employers have the unfettered right to pursue injunctive relief under the Norris-Laguardia Act rather than exercise their rights under Section 301 of the Labor and Management Relations Act in the event there are disputes between the parties as to compliance with an arbitration award. Clearly, this would be an unintended result.

5.    **Plaintiff Cannot Prove There Is A Public Officer Charged With The Duty To Protect Complainant's "Property" Or That Such An Individual Is Unable Or Unwilling to Furnish Adequate Protection.**

As noted above, the circumstances at issue in the instant case do not give rise to injunctive relief under 29 U.S.C.§ 107 of the Norris-Laguardia Act. In this regard, it is clear from the language of 29 U.S.C. § 107 that the provided for injunctive relief is for the purpose of protecting an individual's property or business from unlawful acts such as violence, breaches of the peace and criminal acts. (See Section 1 above.) The public officers referred to in Subsection (e) of 29 U.S.C. § 107 are police officers, who are charged with the responsibility of protecting one's property. See *Wilson & Co. v. Birl, supra,* at 950. In *Birl,* in reference to the public officer element, the court noted: "It would be unreasonable to construe the subsection [subsection e] to include losses which the exercise of the powers of police are hardly calculated to prevent. The words mean that only where the police can't or won't do their job of protecting physical property the court may step in." Id. In the instant case, it is clear that police are not charged with the responsibility of enforcing arbitration awards. As such, it is also clear from the

19

plain language of 29 U.S.C. § 107 that the conduct at issue in the Complaint is not the type of conduct subject to injunctive relief.

In the alternative, to the extent it is determined that subsection (e) of 29 U.S.C. § 107 does not refer exclusively to police officers, Defendant maintains there are numerous public officials who are both able and willing to furnish Plaintiff with adequate protection. In this regard, Plaintiff can obtain appropriate protection through the NLRB and/or a suit to enforce Arbitrator Nitka's Award pursuant to Section 301 of the Labor and Management Relations Act. As such, even if subsection (e) of 29 U.S.C. § 107 is deemed to apply to public officials other than police officers, Plaintiff cannot demonstrate that a public officer charged with a duty to protect Complainant's property is either unable or unwilling to furnish adequate protection.

## CONCLUSION

In summary, the Court is without jurisdiction to grant the relief sought by Plaintiff in the instant case. Moreover, even assuming the Court has jurisdiction over this matter, Plaintiff cannot establish the factual conditions precedent to the entry of a temporary restraining order or preliminary injunction under 29 U.S.C. § 107. Accordingly, Plaintiff's Complaint must be dismissed in its entirety or, in the alternative, Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction must be denied.

WHEREFORE, for the foregoing reasons, Defendant respectfully prays this Court enter an Order dismissing Plaintiff's Complaint in its entirety, with an award of costs and attorneys' fees to Defendant for the costs incurred in defending this matter. In the alternative, Defendant prays for an Order denying Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction and for such other and further relief as the Court deems just and proper.

Respectfully submitted,

THE LOWENBAUM PARTNERSHIP, LLC

By: /s/ William M. Lawson
      William M. Lawson
      222 S. Central Ave.
      Suite 901
      St. Louis, MO 63105
      (314) 746-4875
      (314) 746-4844 (fax)

Attorneys for Defendant

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing was electronically filed with the United States District Court, Eastern District of Missouri, September 13, 2006, to the following:

Sherrie A. Schroder
Hammond and Shinners, P.C.
7730 Carondelet Ave., Suite 200
St. Louis, MO 63105

                /s/ William M. Lawson

00083918